**GOVERNMENT OF AMERICAN SAMOA, Plaintiff**

**v.**

**INA AFAMASAGA, Defendant**

High Court of American Samoa
Trial Division

CR No. 27-90

December 5, 1990

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, Falefatu J. Ala'ilima-Utu, Assistant Attorney General
For Defendant, Barry I. Rose, Assistant Public Defender

On Motion to Suppress and Dismiss:

The defendant filed a series of pre-trial motions.

## I. Suggestive Showup

The defendant is charged with a number of sexual and related offenses. Among other things, he complains that he was identified by the complainant witness on a one-on-one confrontation at the police station, in circumstances which were unnecessarily suggestive and so unfair as to deny him of rights to due process. He moves to suppress this identification as inadmissible evidence, as well as any subsequent identification by the complainant witness.

Due process mandates that eyewitness identification evidence is not reliable and must be suppressed "if suggestive identification procedures have led to a very substantial likelihood of irreparable misidentification." *Kirby v. Illinois*, 406 U.S. 682, 691 (1972); *see also Simmons v. United States*, 390 U.S. 377, 384 (1968). However, even an impermissibly suggestive identification procedure does not render an identification inadmissible if, in the totality of the circumstances, the identification was nonetheless reliable. *Manson v. Braithwaite*, 432 U.S.

98 (1977). The Supreme Court here concluded that "reliability is the linchpin in determining admissibility of identification testimony." *Id.* at 114. In this connection, the factors to be considered include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainly demonstrated at the confrontation, and the time between the crime and confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself. *Id.*

Although, as defendant points out, a one-on-one showup has been said to be suggestive, *Stovall v. Denno*, 388 U.S. 293 at 302 (1967), under the totality of the circumstances of the matter before us, we are satisfied that the identification of the defendant by the complainant was not so suggestive as to constitute a violation of due process. The evidence clearly demonstrated reliability. According to Officer Leota, he took the complainant to a room where the defendant was waiting and without his prompting or saying anything to her, she identified the defendant as her assailant. In addition, it was equally clear on the evidence that the complainant knew exactly who she was looking for even before she went into the identification room. At the vicinity of the crime, she described her attacker to Officer Leota as having black hair, a black moustache, worn blue shorts, and certain scratch marks on his body. She also related to the officer that she had even seen her assailant before the crime occurred, at a time when he tried to accost her while she sought refuge in a small shack to avoid a stone throwing melee she earlier encountered while trying to get home from work. She further disclosed that a third party, which she actually pointed out to officer Leota at the scene, was there also at the shack thwarting the defendant's attempts to get to the complainant. That third party, Vine Sauiluma, was able to give Officer Leota a name and a lead to the defendant's home. This information was given to the officers immediately after she was found running naked towards a police unit calling for help and complaining of rape.

We find that the defendant's claim about suffering an unduly suggestive or unfair showup not to be meritorious and, accordingly, deny his motion.

147

## II.  Unlawful Seizure

Defendant also moves to suppress a certain written statement which he made at the police station and certain photographs taken of him that evening by the police. The motion is based upon the assertion that defendant was illegally under arrest when taken into custody without a warrant, and that, therefore, the fruits of that unlawful seizure are excludable.

For reasons given, this motion is also denied. The evidence shows that the defendant had voluntarily accompanied the officers to the police station on the morning in question. When the defendant left home with the police officers, it was with his father's knowledge. Indeed, it was his father who woke the defendant, together with another relative who was also sought by the officers for questioning. The ride to the station was in a light-hearted mood of jest; the defendant and his relative were laughing and joking on the way; they asked the officers to stop for cigarettes and the officers accommodated their request.

The evidence also shows that the statement sought to be suppressed was voluntarily given by the defendant. The defendant was, at the time, a college student. He was asked by Officer Leota whether he wished to make a statement, and he agreed. However, prior to his making a statement, Officer Leota gave the defendant the *Miranda* warnings and he supplied a written statement notwithstanding. Unless accompanying an officer to the station is *per se* a custodial situation, we saw nothing in the evidence suggesting overbearance on the part of the police.

The exclusionary rule came about as a prophylactic measure against police excessiveness. *See Mapp v. Ohio*, 367 U.S. 643, 656 (1961).[1] The rule has not, however, evolved into some sort of predisposition against anything involving police action and we refuse to draw inferences where there are none to be drawn. The defendant's argument that the police could have done better --- they could have undertaken a rule book line-up --- is hardly a failing of constitutional proportions. On the other hand, arresting Officer Leota impressed us very much as someone who was earnestly attempting to do a methodical

---

[1]  "Only last year the Court itself recognized that the purpose of the exclusionary rule 'is to deter --- to compel respect for the constitutional guaranty in the only effective available way --- by removing the incentive to disregard it.' *Elkins v. United States*, 364 U.S. 206, 217."

job. We conclude on the facts that the defendant had every opportunity to freely make up his own mind.

The next question is whether the defendant was wrongfully arrested without a warrant. The evidence revealed that after he was identified and photographed and after making his statement, the defendant was advised by Officer Leota that he was under arrest. We need not examine the validity of this arrest for purposes of this suppression motion since (assuming arguendo that the arrest was invalid) there is no causal relationship between the subsequent arrest (the poisoned tree) and the "prior" identification, photographs, and statement.

### III. Dismissal for Vagueness

The information filed in this matter charges the defendant with Assault III, a class A misdemeanor; False Imprisonment, a class A misdemeanor; Rape, a class B felony; Sodomy, a class B felony; and Sexual Abuse I, a class D felony. The defendant sought more factual information on the charges and filed a bill of particulars on October 10, 1990. The Court granted the request on the condition that the government could oppose any of the requests made if notice to that effect was filed within 10 days. On October 19, 1990, the government responded by a bill which essentially told the defendant that he had as much information as the government had on the case. Alternatively, the government took the position that the information sought was readily accessible to the defendant vide, the evidence given at the preliminary examination, the police report supplied, the supporting affidavit for the warrant of arrest, together with anything else discoverable on the part of the government. The defendant then secured a transcript of the evidence given in the preliminary examination and subsequently filed a motion to *dismiss* Counts I (Assault III), II (False Imprisonment), IV (Sodomy), and V (Sexual Abuse I). He contends a violation of his rights, under Revised Const. Am. Samoa art. I, §6, to be apprised of the accusations against him, to enable him to prepare his defense and to ensure against double jeopardy from a second prosecution. The defendant further challenges the information as failing to comport with the requirements of Trial Court Rule of Criminal Procedure 7(c) --- that an information must be a plain, concise and definite written statement of the essential facts constituting the offense charged --- because it merely recites the statutory language of each alleged offense.

That a criminal charge is couched in the language of the statute, is not, of itself, grounds for the dismissal of an information. It is settled

149

law that an information using only statutory language is quite permissible as long as the statute sets forth "fully, directly and expressly, without any uncertainty or ambiguity, . . .all the elements necessary to constitute the offence intended to be punished." *Hamling v. United States*, 418 J.S. 87, 117-18 (1974). Furthermore, Rule 7(c) "does not mean that the indictment must set forth facts and evidentiary details necessary to establish each of the elements of the charged offense." *United States v. Williams*, 679 F.2d 504, 508 (1982), *cert. denied* 459 U.S. 1111. There is a distinction between "a defendant's constitutional right to know what offense he is charged with and his desire to know the evidentiary details of the prosecution's case." *Id.* at 509. *See also United States v. Crow*, 824 F.2d 761 (1987).[2]

After reviewing the information in this matter, we conclude sufficiency. The information does inform the defendant of the nature of the charges against him to enable him to prepare his defense and, indeed, to invoke the double jeopardy clause. Necessarily, we are not impressed with the defense's double jeopardy argument with regard to the two counts alleging sexual offenses. It is argued that the preliminary examination record alludes to a number of ways in which the defendant could conceivably be found guilty of sodomy, since an element of this offense, namely, "deviate sexual intercourse," is defined by statute as "any sexual act involving the genitals of one person and the mouth, tongue, hand, or anus of another person." *See* A.S.C.A. § 46.3601(a). Defendant seems to think that unless the government is pinned down to exactly the conduct charged, for example, genitals/mouth, or genitals/tongue, or genitals/hand, or genitals/anus, his client could be subject to further prosecution. This thinking is unfounded. It is also settled law that entire record of the proceedings, and not just the information alone, may be referred to if there is a claim of double jeopardy with a subsequent prosecution. *Woodring v. United States*, 376 F.2d 619 (10th Cir. 1967), *cert. denied* 389 U.S. 885. Clearly, what the defense seeks here is the evidentiary details of the prosecution's case.

For the foregoing reasons, the motions are denied.

---

[2]    The information here tracked the language of a regulation which made penal "[a]ny conduct. . . .which impedes or disrupts the performance of official duties by Government employees." The Court here found that the essential element of the charge was conduct producing a prohibited result and that the defendant was charged with that conduct. While the charge lacked particulars, the defendant was found to be placed on notice of the conduct made penal; the details of the conduct would have added nothing save unnecessary evidentiary matter going to the proof of that conduct.

It is so Ordered.