**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

　　　　v.

WILLIAM JAMES BICHSEL,
　　　　　*Defendant-Appellant.*

No. 04-30126

D.C. No.
CR-03-05372-RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
December 6, 2004—Seattle, Washington

Filed January 13, 2005

Before: Michael Daly Hawkins, Sidney R. Thomas, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Hawkins

## COUNSEL

Colin Fieman (briefed and argued), Federal Public Defender's Office, Tacoma, Washington, for the defendant-appellant.

Jeffrey B. Coopersmith (argued) and Barbara J. Sievers (briefed), United States Attorney's Office, Seattle, Washington, for the plaintiff-appellee.

## OPINION

HAWKINS, Circuit Judge:

Because the indoor posting of applicable federal regulations was inconspicuous to visitors outside the United States courthouse in Tacoma ("the courthouse"), we must reach an

issue of first impression: whether actual notice is sufficient to meet the conspicuous posting requirement of 40 U.S.C. § 1315 for the enforcement of 41 C.F.R. § 102-74.385, failure to comply with the lawful order of a federal police officer.[1] We hold that actual notice is fair and adequate notice, and affirm Father William Bichsel's ("Father Bichsel") conviction under the regulation.

## I.   BACKGROUND

Father Bichsel, a Jesuit priest, chained himself to the doors of the courthouse on March 19, 2003, in protest of the impending Iraq war. Father Bichsel came to the courthouse with nineteen members of the Catholic community, who engaged in a prayer vigil and represented Iraqi women holding children. Father Bichsel felt that he and his fellow protesters "were doing a citizens' arrest of the United States government."

Federal Protective Service ("FPS") officer Richard Reilley ("Officer Reilley"), dressed in full uniform with a badge and the insignia of the FPS, approached Father Bichsel at approximately 6:30 a.m. that morning. Officer Reilley ascertained that Father Bichsel was blocking an emergency exit, which created a safety hazard for employees within the courthouse. Furthermore, Officer Reilley was concerned that Father Bichsel could be injured and the courthouse doors could be damaged.

Officer Reilley told Father Bichsel that he "had to take the chains off" so that the courthouse doors could be opened. Father Bichsel refused. Officer Reilley informed Father Bichsel that he had five minutes to unchain himself — otherwise, he would be arrested. Officer Reilley went inside the court-

---

[1] In *United States v. Crow*, 824 F.2d 761, 762 n.2 (9th Cir. 1987), this Court refused to address the posting requirement under the former version of 40 U.S.C. § 1315, concluding that the issue was not properly raised.

house to retrieve a set of bolt cutters. After four or five minutes he returned, and once more ordered Father Bichsel to unchain himself. Father Bichsel once again refused. Upon this second refusal, Officer Reilley cut Father Bichsel's chains and arrested him for failure to comply with his order, pursuant to 41 C.F.R. § 102-74.385.

The doors of the courthouse usually open by 7:00 a.m., at which time a security guard places a "sandwich board" sign listing some of the building's rules and regulations. The sign is intended to notify visitors that they are entering federal property and that C.F.R. regulations apply outside the main entrance. However, the sandwich board sign was not yet posted on the day of Father Bichsel's arrest. Although there are permanent signs of the building's full rules and regulations posted on the inside of the facility entryway, these were not visible to Father Bichsel standing outside.

Before the arrest, Officer Reilley never notified Father Bichsel that he was on federal property, or that federal regulations were in force. However, it is undisputed that Father Bichsel was aware that the building was a federal courthouse and that Officer Reilley was a law enforcement officer. Father Bichsel also understood that he would be arrested if he did not unchain himself.

Father Bichsel was tried before U.S. Magistrate Judge Karen Strombom, who found him guilty under 41 C.F.R. § 102-74.385 for failing to comply with the lawful direction of a federal police officer. The district court affirmed the conviction, holding that (1) the required rules and regulations were posted in a conspicuous location at the entrance to the building, and (2) there was sufficient evidence to find that Father Bichsel failed to comply with a lawful order of a federal police officer. The district court also noted that Officer Reilley's warnings to Father Bichsel provided adequate notice of the regulation. Father Bichsel was sentenced to five days in jail.

## II.  DISCUSSION

**[1]** The United States courthouse in Tacoma is under the control and authority of the General Services Administration ("GSA"), and FPS officers are authorized to enforce GSA regulations, including 41 C.F.R. § 102-74.385, which states:

> Persons in and on property must at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of Federal police officers and other authorized individuals.

To enforce this regulation, federal agencies must post notice of it "at each public entrance to each Federal facility." 41 C.F.R. § 102-74.365. Furthermore, 41 C.F.R. § 102-74.385 is promulgated under 40 U.S.C. § 1315, which states that "regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property . . . shall be posted and remain posted in a conspicuous place on the property." § 1315(c)(1). Section 1315 was enacted in August 2002, and is derived from former 40 U.S.C. § 318.

At issue here is whether Father Bichsel received notice of 41 C.F.R. § 102-74.385 in a "conspicuous place." If not, we must decide whether "actual notice" of the regulation suffices, and whether Father Bichsel had such actual notice. We review statutory construction de novo. *United States v. Cabaccang*, 332 F.3d 622, 624-25 (9th Cir. 2003) (en banc).

### A.  *Conspicuous Place*

**[2]** This Court has not yet interpreted the meaning of "conspicuous place" in § 1315(c)(1).[2] The district court adopted

---

[2]The decision in *United States v. Lunstedt*, 997 F.2d 665 (9th Cir. 1993), is not on point. There, we upheld a jury's finding that a sign was "conspicuously" posted pursuant to 18 U.S.C. § 930(g) (firearm posses-

the *Black's Law Dictionary* definition of "conspicuous place," as quoted in *United States v. Strakoff*, 719 F.2d 1307, 1309 (5th Cir. 1983):

> Within the meaning of a statute relating to the posting of notices, a "conspicuous place" means one which is reasonably calculated to impart the information in question.

We also adopt this helpful definition of "conspicuous place."

**[3]** As in *Strakoff*, the regulation here was not posted in a conspicuous place "reasonably calculated to impart" notice. In *Strakoff*, the Fifth Circuit held that notices posted on two bulletin boards on the first floor (one in a mail box lobby and one on an inside wall of the courthouse lobby) and on the second, third and fourth floors next to the elevator buttons, were not conspicuous under this definition. 719 F.2d at 1309-10. There, a person "entering the Courthouse through either public entrance, going directly to and through the metal detector, and boarding an elevator . . . would never see a posted notice." *Id.* at 1309. Further, Strakoff gave "uncontradicted testimony that he had not seen any notice." *Id.*

**[4]** Father Bichsel, much like Strakoff, had no way of seeing the posted notice inside the courthouse, and testified that he had not seen any notice. While the district court held that the rules posted inside the courthouse, outside of Father Bichsel's view, were in a "conspicuous place," a place not accessi-

---

sion in federal court), where the warning sign was posted on the bulletin board in the foyer, just inside the only public entrance to the courthouse. *Lunstedt*, 997 F.2d at 668. A person entering the courthouse, as Lunstedt did, would have to walk past the sign to reach the metal detector. *Id.* Here, Father Bichsel did not have to walk past any sign posting the building's rules and regulations to chain himself to the outside doors, so *Lunstedt*'s affirmance of a jury verdict without interpreting the term "conspicuous" does not directly apply.

ble, let alone within reading distance, to an outside courthouse visitor cannot be conspicuous enough to impart notice of the regulation.

Most likely knowing this, the courthouse staff places a "sandwich board" sign outside the building during business hours to reasonably impart notice. Officer Christine Brannan testified that the sign is "to notify people that they're entering Federal property and CFR regulations apply outside the main entrance." This sign, however, was not yet posted before Father Bichsel's arrest that day. Therefore, we hold that the indoor posting of the regulation was not in a "conspicuous place" reasonably calculated to impart notice to Father Bichsel or a similarly situated individual outside of the courthouse.

B. *Actual Notice*

[5] This circuit has yet to decide whether conspicuous notice is a required element of a conviction pursuant to a regulation promulgated under § 1315, or whether actual notice suffices.[3] However, several of our sister circuits have found that an actual notice exception may be read into the statute. We find their reasoning persuasive. The actual notice exception fulfills the rationale behind the conspicuous posting requirement because actual notice is the best notice.

This holding is consistent with *United States v. Davis*, 339

---

[3]In *United States v. True*, 946 F.2d 682, 683 (9th Cir. 1991), we reversed a conviction for entering a closed area because the National Forest Service closure order was invalid for inadequately describing its scope under applicable notice regulations. Because the forest officers had no authority to close the area, it made no difference that the defendants had "actual notice" of the invalid order. *Id.* at 687 ("If a law enforcement officer is not authorized to close public areas, then notice to citizens of an attempted order by such an officer cannot transform that attempt into an effective closure order."). The case at hand presents a different circumstance because the officer provided actual notice of a valid federal regulation and was authorized to enforce it.

F.3d 1223 (10th Cir. 2003), which adopts the actual notice exception.[4] The statute at issue in *Davis*, 33 U.S.C. § 1, required posting in "conspicuous and appropriate places." *Id.* at 1226. While no such posting existed, the Tenth Circuit held that "actual knowledge of a regulation satisfies a potential posting requirement." *Id.* at 1228. Because Davis received verbal and written warnings that his business practices and mooring of boats was illegal, and because Davis admitted to receiving such, the court held it was clear that Davis had "actual knowledge of the regulations" and affirmed the conviction. *Id.*

**[6]** Like Davis, Father Bichsel received warnings from Officer Reilley, and admitted to receiving such. Officer Reilley told Father Bichsel the exact conduct that was prohibited and the consequences for disobeying. Father Bichsel understood that he was in a federal courthouse, that Officer Reilley was a police officer with a federal badge and insignia, and that he would be arrested if he did not unchain himself. Thus, Father Bichsel had actual notice of 41 C.F.R. § 102-74.385 and was lawfully arrested under the regulation.

---

[4]Two District of Colorado opinions conflict on the issue of actual notice — compare *United States v. Holdsworth*, 990 F. Supp. 1274 (D. Colo. 1998), with *United States v. Boyer*, 935 F. Supp. 1138 (D. Colo. 1996). *Davis* adopts the reasoning of *Holdworth*. *Davis*, 339 F.3d at 1228. *Holdsworth* focuses on the rationale of *Boyer*: posting is a vehicle for notice. *Holdsworth*, 990 F. Supp. at 1278. In *Holdsworth*, there was no evidence of any posting at the courthouse, but the defendant's conduct occurred off-sight. *Id.* at 1277. The court reasoned that even if the regulation had been posted in a conspicuous public place, the defendant would not have seen it, thus making the posting requirement of § 318a "arguably a formality with no substance." *Id.* at 1278. Because written notice was provided that the defendant's conduct could result in being charged with a specific section of the Code of Federal Regulations (albeit the wrong one), the court held the defendant had actual notice sufficient to meet the posting requirement. *Id.*

In *Boyer*, although the court deemed the posting requirement an "essential element of the charge," 935 F. Supp. at 1142, the issue of actual notice was not raised.

The Fourth and Fifth Circuits also support the actual notice exception. In *Strakoff*, the Fifth Circuit suggested that actual notice is sufficient. The court held that because notice was not posted in a conspicuous place, and "absent any showing that Strakoff did *in fact* have notice of the proscriptions of § 101-20.313, [the] conviction [could not] stand." 719 F.2d at 1310 (emphasis added).

Although the Fourth Circuit did not have to reach the issue of actual notice, its reasoning in *United States v. Cassiagnol*, 420 F.2d 868 (4th Cir. 1970)*,* is germane to the importance of direct warnings in upholding criminal convictions. The district court noted *Cassiagnol*'s reply to the argument that the protesters did not know that what they were doing was illegal:

> [T]he record is clear and uncontroverted that numerous warnings were given to the effect that remaining on the premises would subject the demonstrators to arrest and detention. We find no merit in this claim that they were not apprised that their actions would be illegal.

420 F.2d at 874. Here, too, Officer Reilley gave Father Bichsel several warnings that he would be arrested if he did not unchain himself, and thus apprised Father Bichsel that refusing his order would be illegal.

Finally, the district court's appeal to common sense makes good sense. As Judge Leighton stated, "Father Bichsel could not have reasonably believed it was lawful to chain himself to the courthouse doors;" "[a]t some point, common sense must prevail." An actual notice exception to the conspicuous posting requirement is in lock step with fair notice and common sense.

## III.  CONCLUSION

**[7]** For the foregoing reasons, we hold that actual notice meets the § 1315 posting requirement and affirm Father Bich-

sel's conviction for failure to comply with the lawful order of a federal police officer.

AFFIRMED.